533 P.2d 87

**GUARANTEED WARRANTY CORP., INC., an Arizona Corporation, Appellant,**

**v.**

**STATE of Arizona ex rel. Millard HUMPHREY, Director of Insurance, Appellee.**

**No. 1 CA–CIV 2444.**

Court of Appeals of Arizona, Division 1, Department A.

March 25, 1975.

Rehearing Denied April 23, 1975.

Review Denied June 3, 1975.

**328**

Gerst & Campo by John Campo, III, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by Nicholas C. Guttilla, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

OGG, Presiding Judge.

The appellee-plaintiff State of Arizona, through Millard Humphrey, Director of Insurance, sought an injunction in the Maricopa County Superior Court to enjoin the appellant-defendant Guaranteed Warranty Corp., Inc., from acting as an insurer without a valid license. The trial court, after hearing the case on a stipulated set of facts, granted a decree of permanent injunction against the activities of Guaranteed Warranty and this appeal followed. Upon stipulation of the parties the enforcement of the permanent injunction has been stayed pending the outcome of this appeal.

The Director instituted the present action, seeking to enjoin Guaranteed Warranty from selling certain "Warranty Agreement" contracts. It is the Director's contention that the sale of such contracts involves the sale of insurance and that Guaranteed Warranty is subject to the regulation of Title 20 of the Arizona Revised Statutes which regulates the conduct of insurance business within the State of Arizona. The pertinent portion of § 20–206 reads:

> "No person shall act as an insurer and no insurer shall transact insurance in this state except as authorized by a subsisting authority granted to it by the director . . . ."

Guaranteed Warranty agrees that no insurer can sell insurance in this state without a license from the director of insurance. It is Guaranteed Warranty's posi-

tion that the contracts they sell are warranties and not insurance. Guaranteed Warranty further contends that its contemplated future sale of installation and maintenance contracts are contingent service contracts and are not insurance subject to regulation by the state.

All of the necessary facts to decide this case were stipulated to by the parties and the facts were incorporated into the findings of fact and conclusions of law by the trial judge. The stipulated facts necessary for this appeal are:

"Defendant, GUARANTEED WARRANTY CORP., INC. is an Arizona corporation duly organized and existing under the laws of the State of Arizona and conducting its business at 6125 East Indian School Road, Scottsdale, Arizona.

Defendant did at no time nor does it contemplate manufacturing or selling televisions or television picture tubes.

Defendant's sole business consists of establishing dealerships with independent stores, who sell television sets to the public, to make defendant's warranty program available to television purchasers. Once a dealership has been established, the independent television dealer, concurrently with the sale of its television set to an individual, attempts to sell to said individual, Defendant's 'Guaranteed Warranty Contract,' for the sum of $29.95 for color television picture tubes and $14.95 for black and white television tubes, whereby Defendant agrees to replace said television picture tube which fails as a result of a manufacturing defect only. In addition, the replacement of the picture tube is to take place only after the manufacturer's warranty period has expired. Although a dealership is entered into between the Defendant and independent television dealers, the actual Guaranteed Warranty Contract is entered into between Defendant and the individual purchaser of a television set. Once the dealer has sold the set and the Guaranteed Warranty Contract, the application for the Guaranteed Warranty Contract is delivered or mailed to Defendant with a check of the dealer, less the dealer's commission and thereafter the contract is sent to the television set buyer by Defendant.

At the present time, Defendant provides no labor regarding the installation of the television tube but merely provides to the purchaser of the television set, a picture tube during the warranty period, by reason of manufacturing defects. Defendant's guaranty to replace a picture tube does not apply to any other defect in the picture tube, except a manufacturing defect.

Defendant contemplates in the near future to provide services and labor for the installation of the television picture tube and/or for the maintenance of the television set in the event of a defect in the picture tube caused by the manufacturer's defect.

Defendant does not solicit business directly from the general public, but sells its product through dealers of television sets only.

In the event the replacement of a picture tube comes within Defendant's warranty, then Defendant merely replaces the picture tube by forwarding the tube directly to the purchaser of the television set."

The two issues presented by this appeal are: (1) Is the Guaranteed Warranty contract herein questioned an insurance contract or a warranty agreement; and (2) If Guaranteed Warranty provides service and installation under its contracts, will the contract then be an insurance contract or a prepaid service contract?

In our opinion, the trial court was correct in finding that the present activities and the future planned activities of Guaranteed Warranty constitute the sale of insurance and that such activities cannot be conducted by an insurer who is not licensed by the state.

## IS IT A WARRANTY OR AN INSURANCE CONTRACT?

ARS § 20–103 defines insurance:

" 'Insurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies."

■ Five elements are normally present in an insurance contract, which include:

1. An insurable interest
2. A risk of loss
3. An assumption of the risk by the insurer
4. A general scheme to distribute the loss among the larger group of persons bearing similar risks
5. The payment of a premium for the assumption of risk.

See W. Vance, Handbook on Insurance, § 1 at 2 (2d ed. 1930); 63 A.L.R. 711, 713; 100 A.L.R. 1449, 1450; 119 A.L.R. 1241, 1242.

■ In this case, Guaranteed Warranty meets each element of the insurance test when it contracts to replace television picture tubes which fail as a result of manufacturing defects after the manufacturer's warranty period has expired. The customers who own the television sets have an insurable interest; the customers have the risk of loss when a picture tube in their set becomes defective after the manufacturer's warranty period has expired. Guaranteed Warranty assumes the risk and replaces any such defective tube; Guaranteed Warranty has a general scheme to distribute the loss among the larger group of television set owners who have contracted for the coverage and the set owners have paid a premium for this assumption of risk.

In 77 C.J.S. Sales § 301 (1952), a "warranty" is defined as:

"A warranty is a statement or *representation made by the seller of goods* contemporaneously with, and as a part of, the contract of sale, although collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure that certain fact are or shall be as he then represents them.
. . . (Emphasis added.)"

The emphasized portion of the above definition indicates that "the seller of goods" is the party making the warranty. Arizona's Uniform Commercial Code—Sales, consisting of Article 2 of Chapter 14 of Title 44, Arizona Revised Statutes, and specifically §§ 44–2329 (Warranty of Title), 44–2330 (Express Warranties), 44–2331 (Implied Warranty—merchantability), 44–2332 (Implied Warranty—Fitness) and 44–2335 (Third Party Beneficiaries) clearly indicates that a warranty is made by the seller of the goods and not by some unrelated third party.

We believe that under the facts of this case, a true warranty contract does not exist. Guaranteed Warranty is neither the manufacturer nor the seller of the television sets or picture tubes.

## THE PREPAID SERVICE CONTRACT ISSUE

■ Guaranteed Warranty intends, in the future, to enlarge its contract coverage to provide services and labor for the installation of the defective picture tube and/or for the maintenance of the television set in the event of a faulty picture tube caused by manufacturing defects. It is Guaranteed Warranty's position that it will then be performing a contingent service contract, and that it will not be transacting insurance.

Both parties agree that the proper test to be followed in determining this issue is whether the principal purpose of the plan, when viewed in its entirety, is "service" or "indemnity." See Transportation Guarantee Company v. Jellins, 29 Cal.2d 242, 174 P.2d 625 (1946); 119 A.L.R. 1241, 43 Am. Jur.2d, Insurance, § 7 (1969).

Guaranteed Warranty's new proposal to cover not only the picture tube but also to provide the labor does not alter the general

plan or the law applicable in this case. Guaranteed Warranty's enlarged future plan is still to indemnify the purchasers of the contract. Indemnity is the principal object of the contract and the mere addition of labor does not substantially alter this purpose.

The judgment of the trial court is affirmed.

DONOFRIO and FROEB, JJ., concur.